IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| VINITA SHARMA, | ) | |
|     Petitioner, | ) | |
| | ) | |
|     v. | ) | Civil Action No. 1:14cv240 |
| | ) | |
| SARAH TAYLOR, *et al.*, | ) | |
|     Respondents. | ) | |
| | ) | |

## MEMORANDUM OPINION

This is a civil action brought pursuant to 8 U.S.C. § 1421(c) seeking review of a denial of an application for naturalization by the United States Citizenship and Immigration Service ("USCIS"). Petitioner contends USCIS erred in denying her January 22, 2013 naturalization application in the face of a sentence commutation granted by the Governor of Virginia reducing by one day the one-year sentence she received for a 1995 felony larceny conviction. Because the Governor labeled the commutation order *"nunc pro tunc"* to the date of petitioner's sentencing, petitioner contends that the order effectively erased the "aggravated felony" nature of the 1995 conviction that had previously been a bar to her naturalization, pursuant to the Immigration & Naturalization Act ("INA"), 8 U.S.C. § 1101(f). Respondents, for their part, contend that 8 C.F.R. § 316.10(c)(2)(i) governs petitioner's application, and thus that she must wait three years from the date of her sentence commutation to establish the "good moral character" required by the INA, 8 U.S.C. § 1101(f). Petitioner, in response, argues that USCIS's construction and application of § 316.10(c)(2)(i) is incorrect, and that the *nunc pro tunc* label of the Governor's sentence commutation order results in her immediate eligibility for naturalization.

At issue, therefore, on cross-motions for summary judgment, are the following questions:

1

(1) Whether the USCIS's construction of § 316.10(c)(2)(i) to apply to sentence commutations as well as pardons is entitled to deference so that the regulation governs petitioner's application for naturalization; and

(2) Whether the commutation order's *nunc pro tunc* label is effective to erase the aggravated felony nature of petitioner's conviction so as to render her immediately eligible for naturalization.

## I.

Petitioner Vinita Sharma, a 54-year old citizen of India, is married to a U.S. citizen and has been a lawful permanent resident of the United States since October 16, 1980.

Respondents are six officials within the USCIS or supervising agencies, all sued in their official capacity. Sarah Taylor, District Director of the USCIS Washington District Office, and Kimberly Zanotti, Field Office Director of the USCIS Washington District Office, are responsible for adjudicating N-400 applications for naturalization by applicants within that office's jurisdiction. Lori Scialabba and Rendell Jones are Acting Director and Acting Deputy Director of USCIS, respectively. Jeh Johnson is the Secretary of the Department of Homeland Security ("DHS"), which has authority over the administration and enforcement of U.S. immigration laws, policies, and procedure. Eric Holder is Attorney General of the United States, charged under 8 U.S.C. § 1103 with determining all issues of law pertaining to the immigration and naturalization of aliens.

The administrative record reflects the following pertinent facts:

On May 18, 1995, petitioner was arrested and charged with stealing over $200 of merchandise from a department store in Fairfax County, Virginia. Petitioner pled guilty to a charge of concealment of merchandise, a violation of Virginia Code § 8.2-103. On October 13, 1995, she was sentenced to twelve months in jail, with all twelve months suspended.

Five years later, on August 28, 2000, petitioner filed her first naturalization application, in which, as required, she disclosed her 1995 felony conviction. On July 17, 2001, USCIS's predecessor, the Immigration and Naturalization Service ("INS"), denied her application on the ground that her Virginia felony larceny conviction, which resulted in a twelve-month sentence, qualified as an "aggravated felony" under the INA, thereby precluding her from demonstrating the "good moral character" required by the INA for naturalization. 8 U.S.C. § 1427(a).

Petitioner sought to remove this bar to her naturalization by requesting executive clemency from the Governor of Virginia via a sentence commutation. The Governor granted this request on December 18, 2012, issuing a commutation order reducing her sentence from twelve months to 364 days, "*nunc pro tunc*" to the date of her 1995 sentencing. Thereafter, believing that the sentence commutation served to erase the "aggravated felony" classification of her conviction, petitioner, on January 22, 2013, once again filed a naturalization application. This application also failed: USCIS denied it on June 3, 2013, explaining that it regarded the sentence commutation order as a form of executive clemency akin to a pardon. According to USCIS, this sentence commutation order entitled petitioner to the benefit of 8 C.F.R. § 316.10(c)(2)(i), which allows petitioner to demonstrate the requisite good moral character, but only after a period of three years following the date of the commutation order. This result, the USCIS noted, is required by § 316.10(c)(2)(i), which provides that an applicant convicted of murder or an aggravated felony is no longer precluded from establishing good moral character if they receive executive clemency "prior to" the beginning of the statutory period. On administrative appeal, USCIS's interpretation of § 316.10(c)(2)(i) and the decision to deny petitioner's naturalization application were affirmed.

## II.

A brief summary of the statutory and regulatory framework governing naturalization provides useful context for the resolution of the parties' dispute.

The INA authorizes the U.S. Attorney General to naturalize persons as citizens of the United States. 8 U.S.C. § 1421(a). A person seeking naturalization must file a sworn application with the Attorney General through the USCIS. *Id.* § 1445(a); 8 C.F.R. § 316.4(a). Once this occurs, USCIS must examine the applicant's qualifications for naturalization and "make a determination as to whether the application should be granted or denied, with the reasons therefor." 8 U.S.C. § 1446(b), (d).

The INA establishes the requirements for naturalization, which include three major prerequisites. First, after having attained lawful permanent resident status, the applicant must have "resided continuously ... within the United States for at least five years." *Id.* § 1427(a). This period is reduced to three years for applicants who, like petitioner, are "living in marital union" with a U.S. citizen spouse. *Id.* § 1430(a); 8 C.F.R. § 319.1(a). Second, the applicant must have "resided continuously within the United States from the date of the application [for naturalization] up to the time of admission to citizenship." 8 U.S.C. § 1427(a). Third, the applicant must demonstrate that he or she "has been and still is a person of good moral character" during the statutorily prescribed period—either three or five years, depending on whether the applicant is married to a U.S. citizen. 8 U.S.C. § 1427(a).[1] The burden is on the

---

[1] It is worth noting that the INA authorizes the Attorney General to consider "conducts and acts" any time prior to this period in determining whether the applicant has established her good moral character. 8 U.S.C. § 1427(e). Accordingly, it is clear, and the parties do not dispute, that USCIS was entitled to consider the 1995 conviction despite the fact that the conviction occurred outside the three or five year period.

4

applicant to establish each of these naturalization requirements, including the requirement to show good moral character. 8 C.F.R. § 316.2(b).

The INA provides a non-exhaustive definition of "good moral character," as well as a list of those classes of individuals who are automatically precluded from establishing that they possess the requisite good moral character. *See* 8 U.S.C. § 1101(f). For example, the INA precludes USCIS from finding that an applicant has demonstrated "good moral character" if the applicant has "at any time ... been convicted of an aggravated felony." *Id.*; 8 C.F.R. § 316.10(b)(1). An aggravated felony is, in turn, defined as including "a theft offense ... for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(G); 8 C.F.R. § 316.10(b)(1)(ii). The DHS regulations also preclude an applicant from establishing good moral character where she has been convicted of "one or more crimes involving moral turpitude" or has been convicted of two or more offenses for an aggregate sentence of five years or more. 8 C.F.R. § 316.10(b)(2)(i), (ii).

The bar to showing good moral character need not be permanent. The regulations provide that applicants barred from naturalization pursuant to 8 U.S.C. § 1101(f) may revive their ability to demonstrate good moral character if, as 8 C.F.R. § 316.10(c)(2) provides, they receive "a full and unconditional executive pardon." More specifically, applicants convicted of § 316.10*(b)(1)* crimes—murder and aggravated felonies—are no longer precluded from showing good moral character if they receive a pardon "*prior to* the beginning of the statutory period." *Id.* § 316.10(c)(2)(i) (emphasis added). In other words, applicants who have been convicted of an aggravated felony can become eligible for naturalization three or five years after receiving an executive pardon, depending on the applicable "statutory period" under 8 U.S.C. § 1427. Similarly, applicants convicted of § 316.10*(b)(2)* crimes—which include, for example, "crimes

5

involving moral turpitude"—are no longer precluded from showing good moral character if they receive an executive pardon "*during* the statutory period ... provided the applicant can demonstrate that extenuating and/or exonerating circumstances exist that would establish his or her good moral character." *Id.* § 316.10(c)(2)(ii) (emphasis added). At issue here is the USCIS's decision to apply § 316.10(c)(2)(i) to executive clemency in the form of a sentence commutation as well as pardons.

Applicants for naturalization whose applications are denied by USCIS may bring a civil action under 8 U.S.C. § 1421(c) seeking judicial review. Where such judicial review is sought, the courts review USCIS's decision *de novo*. 8 U.S.C. § 1421(c); *Dung Phan v. Holder*, 667 F.3d 448, 451 (4th Cir. 2012).

### III.

#### A.

Analysis properly begins by addressing the parties' contentions concerning the application of § 316.10(c)(2)(i), which provides as follows:

> An applicant who has received a full and unconditional executive pardon prior to the beginning of the statutory period is not precluded by § 316.10(b)(1) from establishing good moral character provided the applicant demonstrates that reformation and rehabilitation occurred prior to the beginning of the statutory period.

Petitioner contends that the regulation, by its terms, applies only to "full and unconditional executive pardon[s]" and has no application to executive clemency in the form of sentence commutations. Respondents answer by contending that USCIS's construction of the regulation to apply to sentence commutations is reasonable and entitled to deference.

It is well established that an agency's interpretation of its own regulation is "controlling unless plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461

(1997) (internal quotation omitted).[2] Courts since *Auer* have further clarified the specific circumstances in which deference is not warranted. For instance, *Auer* deference is inappropriate "when there is reason to suspect that the agency's interpretation 'does not reflect the agency's fair and considered judgment on the matter in question.'" *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166 (2012) (quoting *Auer*, 519 U.S. at 462). This may occur "when the agency's interpretation conflicts with a prior interpretation" or "when it appears that the interpretation is nothing more than a convenient litigating position" or "a *post-hoc* rationalization." *Id.* It is also appropriate to withhold *Auer* deference where the agency's interpretation would result in "unfair surprise" such that deference would "frustrat[e] the notice and predictability purposes of rulemaking." *Id.* at 2168 (internal quotation omitted). In sum, under *Auer*, an agency's interpretation of its own regulation is controlling unless that interpretation is (i) plainly erroneous or inconsistent with the text, purpose, or intent of the regulation or (ii) does not reflect the agency's considered judgment or undermines the parties' settled expectations.

This principle, applied here, points persuasively to the conclusion that USCIS's interpretation of 8 C.F.R. § 316.10(c)(2)(i) is entitled to deference. None of the circumstances in which deference is unwarranted are present here. First, construing § 316.10(c)(2)(i) to cover executive sentence commutations is not contrary to the regulation's plain language. To be sure,

---

[2] *See also Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (holding that deference to an agency's interpretation is required "unless an alternative reading is compelled by the regulation's plain language or by other indications of the [agency's] intent at the time of the regulation's promulgation" (internal quotation omitted)); *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945) ("[T]he ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation."); *Barnes v. Holder*, 625 F.3d 801, 805–06 (4th Cir. 2010) (reviewing a Board of Immigration Appeals determination *de novo* and "affording appropriate deference to the BIA's interpretation of the INA and any attendant regulations" (internal quotation omitted)).

7

the term "full and unconditional executive pardon" is fairly specific as to the nature of the pardon granted and does not specifically refer to sentence commutation. Yet, significantly, the regulation does not expressly exclude sentence commutations from its coverage. Moreover, it is reasonable to construe "pardon" as including sentence commutations as both pardons and commutations fall under the general rubric of executive clemency.[3] Indeed, the Virginia Governor's power to issue pardons and commutations derives from the same constitutional provision, which arguably lumps pardons together with reprieves or sentence commutations. *See* Va. Const. art. V, § 12 (authorizing the Governor "to grant reprieves and pardons after conviction"). As a leading treatise notes, a sentence commutation is essentially a lesser-included species of pardon. *See* RONALD L. GOLDFARB & LINDA R. SINGER, AFTER CONVICTION 343 (1973) ("[P]resumably the [commutation] power is simply a lesser form of pardon."). Thus, the USCIS's decision to construe § 316.10(c)(2)(i) to apply to sentence commutations as well as to pardons is not plainly erroneous or inconsistent with the regulation's text.

Second, USCIS's interpretation of § 316.10(c)(2)(i) is consistent with the regulation's purpose, namely to provide a path to citizenship for applicants whose otherwise disabling conviction status is altered by the exercise of executive clemency. To construe the regulation to include sentence commutations is consistent with this purpose. Just as an executive pardon can change an applicant's conviction status and thereby allow the applicant to show good moral character, a sentence commutation that alters an applicant's conviction status should have the same effect. This is so because the INA makes some offenses aggravated felonies based on the

---

[3] The Supreme Court in *Herrera v. Collins*, 506 U.S. 390, 411 n.12 (1993), noted that "[t]he term 'clemency' refers not only to full or conditional pardons, but also commutations, remissions of fines, and reprieves."

nature of the act alone—for example, murder, rape, or sexual abuse of a minor[4]—while others are based on the nature of the act *plus* the length of the sentence the applicant received—for example "a theft offense . . . for which the term of imprisonment is at least one year," 8 U.S.C. § 1101(C)(43)(G). Thus, for an applicant convicted of murder, § 316.10(c)(2)(i) acknowledges that an executive pardon has changed his aggravated felony classification and removes the preclusion from demonstrating good moral character. Similarly, as here, where an applicant's aggravated felony classification depends on the length of her sentence, it is appropriate to construe the same regulatory provision to apply when an exercise of executive clemency changes the characterization of the applicant's conviction.

Further, USCIS's decision does not show any of the warning signs identified in *Christopher v. SmithKline Beecham*, 132 S. Ct. 2156. The interpretation does not conflict with any prior interpretation, as both parties agree that a sentence commutation's effect on the good moral character determination is an issue of first impression. For the same reason, USCIS's interpretation also does not raise problems of notice or unfair surprise: Unlike in *SmithKline*, 132 S. Ct. at 2168, there has been no longstanding understanding that the pardon provision would not apply to sentence commutations such that USCIS's present interpretation disrupts the parties' reasonable expectations. There is also no reason to believe that USCIS's interpretation reflects anything but "the agency's fair and considered judgment on the matter in question." *Id.* at 2166; *Auer v. Robbins*, 519 U.S. at 462. Both the agency's initial decision and its decision on appeal contain well-reasoned explanations of the reasons USCIS applied § 316.10(c)(2)(i) to petitioner's

---

[4] 8 U.S.C. § 1101(a)(43)(A).

application and include citations to the cases that guided the agency's interpretation and an explanation for distinguishing others.[5]

It is important to note that if USCIS's interpretation of § 316.10(c)(2)(i) is rejected, the result would be to put petitioner in a worse position than the one she finds herself in now. Setting aside, for a moment, her argument with respect to the *nunc pro tunc* designation of her sentence commutation order, if § 316.10(c)(2)(i) were not to apply to petitioner's application, then petitioner, absent a pardon, would be forever barred from citizenship. The INA prohibits USCIS from finding that "one who *at any time* has been convicted of an aggravated felony" possesses the requisite good moral character. 8 U.S.C. § 1101(f)(8) (emphasis added). Before § 316.10(c)(2) was promulgated, federal courts had held that almost the same statutory language—"one who *at any time* has been convicted of murder"—indicated Congress's intent that a murder conviction was a "perpetual bar" to demonstrating the requisite good moral

---

[5] For example, USCIS, in denying petitioner's application, explained as follows:

> It is noted that USCIS does recognize the Commutation of Sentence within the context of a criminal conviction. However, USCIS is unable to recognize the Commutation of Sentence within the context of the good moral character requirement found under 101(f) of the Act. In Matter of Siacco, 184 F. Supp. 803 (D. Md. 1960), the United States District Court of Maryland ruled that a conviction of the crime of murder should be an absolute and perpetual bar to naturalization, despite a pardon, unless the pardon is based upon a finding that the defendant was improperly convicted at his original trial. . . .
> . . . "It is important to note that [two similar cases which deal with the reduction of an applicant's sentencing] take place in the context of removal proceedings, in which the government bears a heavy burden of showing that the alien is removable. Your case, on the other hand, falls under the context of naturalization proceedings, in which you bear the burden of showing that you have met all of the requirements to receive the immigration benefit of naturalization. See INA 318; Salem v. Holder, 647 F.3d 111 (4th Cir. 2011). Furthermore, both of the decisions at question in these cases mere made by judges, not governors or persons with executive power.

Decision re: Application of Vinita Sharma (USCIS Nov. 8, 2013) (R. at A617–18).

character for naturalization, *even if* the applicant obtained a full pardon. *See Petition of Quintana*, 203 F. Supp. 376, 378 (S.D. Fla. 1962); *Petition of Siacco*, 184 F. Supp. 803, 805 (D. Md. 1960). Given these precedents and the INA's silence on the effect of pardons or sentence commutations on the good moral character requirement, the USCIS's application of § 316.10(c)(2) is the only means by which executive clemency can revive petitioner's ability to demonstrate good moral character. If "pardon" in § 316.10(c)(2) is not construed to include a sentence commutation, then petitioner has no statutory or regulatory entitlement to relief from the clear statutory command that one who has been convicted of an aggravated felony "at any time" shall not be found to be a person of good moral character.

It is also worth noting that, if the USCIS's construction of § 316.10(c)(2) is rejected, petitioner's only argument for relief is that the commutation of her sentence by one day *nunc pro tunc* to the date of her original sentencing retroactively removes her conviction *ab initio* from the aggravated felony category. This argument, if accepted, allows petitioner to demonstrate her good moral character without the three- or five-year waiting period imposed by § 316.10(c)(2)(i). *See* 8 U.S.C. § 1427. This argument fails for the reasons noted in Part III.B, *infra*, but is addressed here to show that it must also be rejected as anomalous and inconsistent with the regulatory text and structure.

First, petitioner's proposed interpretation would put her in a *better* position than had she received a full and unconditional pardon. Under petitioner's proposal, applicants who receive a full pardon must wait three to five years to apply for naturalization, whereas applicants who receive a sentence commutation of a single day could apply immediately. This is an anomalous outcome because, as already discussed, a sentence commutation is a lesser form of relief than a pardon. Where a pardon "releases the punishment and blots out of existence the guilt, so that in

the eye of the law the offender is as innocent as if he had never committed the offense," *Ex parte Garland*, 71 U.S. (4 Wall.) 333, 380 (1867), a commutation "merely substitutes lighter for heavier punishment." *Chapman v. Scott*, 10 F.2d 156, 160 (D. Conn. 1925). In short, it is nonsensical for applicants receiving a lesser form of clemency (sentence commutation) to be afforded greater naturalization relief than that provided to applicants who are pardoned.

Second, the text of the INA cannot bear petitioner's interpretation. The provision establishing the preclusion from demonstrating good moral character refers to applicants who have been "*convicted*" of an aggravated felony. 8 U.S.C. § 1101(f). The statute defines "conviction" as "a formal judgment of guilt of the alien *entered by a court*" and states that any reference to a criminal sentence—like that which makes petitioner's conviction an aggravated felony—is "deemed to include the period of incarceration or confinement *ordered by a court of law* regardless of any suspension of the imposition or execution of that imprisonment or sentence in whole or in part." *Id.* § 1101(a)(48)(A) (emphasis added). The statute thereby specifies that applicants' convictions and sentences are measured by the orders of a court, not by those of state executives. To give effect to an executive sentence commutation outside of the § 316.10(c)(2) process would contravene this clear statutory command.

Finally, petitioner argues that if the executive pardon provision in § 316.10(c)(2) applies, USCIS should have applied subsection (2)(*ii*) rather than (2)(*i*). The *nunc pro tunc* commutation order, she argues, transforms her conviction with a one year sentence to a conviction with a 364 day sentence. As such, she claims she stands convicted of a "crime involving moral turpitude" ("CIMT"), not an aggravated felony. Pursuant to § 316.10(c)(2)(ii), applicants convicted of a CIMT may demonstrate good moral character if they receive a pardon *during* the statutory period. Thus, petitioner argues, she should be immediately eligible for naturalization so long as

she can "demonstrate that extenuating and/or exonerating circumstances exist that would establish ... her good moral character." 8 C.F.R. § 316.10(c)(2)(ii).

Petitioner's analysis in this regard fails because the regulation's focus is necessarily on the status of the conviction and sentence before the exercise of clemency, not after. Section 316.10(c)(2) refers to the date an applicant has "received" executive clemency, not the clemency's effective date. It follows, therefore, that to give retroactive effect to the Governor's sentence commutation order is contrary to the regulation's express terms. Petitioner's contention impermissibly ignores the regulation's clear focus on the nature of the applicant's offense prior to any clemency order. Put another way, the application of § 316.10(c)(2) is triggered when an applicant has received clemency relating to an offense that had previously precluded the applicant from demonstrating good moral character. Thus whether subsection (i) or (ii) applies depends solely on the applicant's pre-clemency offense.

In sum, USCIS's interpretation reasonably resolves the question of how the agency should recognize an applicant's sentence commutation in a manner consistent with the statutory scheme and purpose but still not contrary to the regulation's plain language. To be sure, the regulation might be construed to be narrowly and strictly limited to apply only to pardons. But "an agency's interpretation need not be the only possible reading of a regulation—or even the best one—to prevail." *Decker v. Nw. Envtl. Def. Ctr.*, 133 S. Ct. 1326, 1337 (2013). Nor is petitioner's alternative reading "compelled" by the statute. *Shalala*, 512 U.S. at 512. Thus, USCIS's interpretation of § 316.10(c)(2)(i) deserves deference and must stand.

### B.

Petitioner next contends that USCIS erred in failing to give effect to the *nunc pro tunc* label of her commutation order. She argues that this designation essentially erases the aggravated

felony nature of her 1995 conviction and makes her immediately eligible to demonstrate good moral character for naturalization. This contention fails.

"*Nunc pro tunc*" is a latin phrase meaning "now for then." BLACKS LAW DICTIONARY 964 (5th ed. 1979). The phrase is used to signify that an order is to be given retroactive effect. The phrase "*nunc pro tunc*" in petitioner's commutation order, she argues, indicates that it should be enforced retroactively to October 13, 1995, the date of her original sentencing. In her view, this means she has always been sentenced to 364 days and thus has never been convicted of an aggravated felony that would preclude her from demonstrating the requisite good moral character. Respondents contend that the Governor's *nunc pro tunc* designation of the sentence commutation order does not control USCIS's good moral character analysis.

Whatever the force of the *nunc pro tunc* order within the Commonwealth of Virginia, a state Governor's order does not control federal immigration decisions or policy. State executive action and state criminal convictions are only relevant to federal immigration law to the extent that federal statutes and regulations *make* them relevant. *Cf. Fierro v. Reno*, 217 F.3d 1, 6 (1st Cir. 2000) ("Congress' rules for naturalization must be applied as they are written, and a state court has no more power to modify them on equitable grounds than does a federal court or agency."). Accordingly, USCIS is entitled to consider the actual date that an applicant "receives" executive clemency, as directed by § 316.10(c)(2). If this interpretation has, as petitioner asserts, "rendered the inclusion of the phrase [*nunc pro tunc*] as absolutely meaningless," Pet. Br. 8, so be it. USCIS answers to federal law, not state executive orders.

Petitioner's examples of *nunc pro tunc* orders being recognized in an immigration context are unavailing as they all involve the decree or decision of a federal actor. In *Matter of L-*, 1 I&N Dec. 1 (BIA 1940), the federal Board of Immigration Appeals ("BIA") upheld the U.S. Attorney

General's exercise of discretion to admit an alien *nunc pro tunc*. In *Matter of A-*, 3 I&N Dec. 168, 172–73 (BIA 1948), the BIA entered a *nunc pro tunc* order to remedy a prior failure to waive grounds of exclusion in order to prevent an alien's deportation. Finally, *Matter of Ducret*, 15 I&N Dec. 620 (BIA 1976), held that it was within a federal immigration judge's power to grant permission, *nunc pro tunc*, to an alien to reapply for admission. *See also Matter of Roman*, 19 I&N Dec. 855 (BIA 1988). These cases demonstrate only that federal courts will give effect to *nunc pro tunc* orders issued by *federal actors*.

By contrast, federal courts adjudicating citizenship issues have consistently declined to give effect to a *nunc pro tunc* order issued by a *state* entity. For example, in *Bustamante-Barrera v. Gonzales*, 447 F.3d 388, 388–400 (5th Cir. 2006), the Fifth Circuit held that it was not obligated to give effect to a state court decree granting the petitioner's mother sole legal custody *nunc pro tunc*, which would have given the petitioner derivative U.S. citizenship. The court concluded that the Full Faith and Credit Act did not "require us to accord that state decree conclusive effect in U.S. *naturalization* proceedings." *Id.*; *see also id.* ("Federal naturalization law exists independent of state family law."). Similarly, the First Circuit, in the same context, declined to give *nunc pro tunc* effect to a custody order that would have served as a basis for the petitioner's derivative citizenship. *Fierro v. Reno*, 217 F.3d at 4–7 (holding that Congress's purpose in enacting the derivative citizenship provision could not support its application to a *nunc pro tunc* custody order).

A review of the pertinent case law discloses that *nunc pro tunc* orders of a state court have only been given effect in the limited context of cases involving removal or deportation. For example, in *In re Oscar Cota-Vargas*, 23 I&N Dec. 849 (BIA 2005), the immigration court gave effect to a state court's *nunc pro tunc* order reducing an alien's sentence to less than one year,

thereby allowing the alien to avoid the aggravated felony classification. *See also Matter of Song*, 23 I&N Dec. 173 (BIA 2001).[6] But these cases are of no avail to petitioner for two reasons. First, as USCIS noted in their denial of petitioner's administrative appeal, whereas the burden of showing inadmissibility in removal proceedings is on the government, the burden of showing good moral character in naturalization proceedings is on the applicant. 8 C.F.R. § 316.2(b); *cf. Berenyi v. District Director*, 385 U.S. 630, 636 (1967) (holding that "doubts" as to an applicant's eligibility to become a U.S. citizen "should be resolved in favor of the United States and against the claimant"). Second, petitioner received a sentence commutation by order of the Governor of Virginia, not a state court. As previously discussed, the INA defines convictions and sentences by reference to court orders. 8 U.S.C. § 1101(a)(48)(A) (stating that a "sentence" is "deemed to include the period of incarceration or confinement *ordered by a court of law*"). In fact, in *Cota-Vargas*, the Board of Immigration Appeals concluded that its decision to honor the *nunc pro tunc* court order was compelled by the statute's focus on the *court-ordered* sentence. 23 I&N Dec. at 852. Had a Virginia court granted petitioner's sentence commutation *nunc pro tunc*, a different result might have obtained here.

---

[6] It is worth noting that *Cota-Vargas* and *Song* are BIA cases which held that it was unnecessary to inquire into the reasons the state court issued the relevant *nunc pro tunc* relief. Yet, there is contrary caselaw on this point. Courts of appeal are nearly unanimous in holding that the availability of relief from adverse immigration actions such as removal depends on the reasons for a state court's action, including whether an order vacating an alien's conviction was issued "for reasons solely related to rehabilitation or to avoid adverse immigration hardships" or "on the basis of a procedural or substantive defect in the underlying criminal proceedings." *Pickering v. Gonzales*, 465 F.3d 263, 266 (6th Cir. 2006); *see also Murillo-Espinoza v. INS*, 261 F.3d 771 (9th Cir. 2001); *Sandoval v. INS*, 245 F.3d 577 (7th Cir. 2001); *Herrera-Inirio v. INS*, 209 F.3d 299 (1st Cir. 2000). But given the conclusion reached here—that USCIS is not required to give effect to the *nunc pro tunc* label of petitioner's executive sentence commutation order—it is unnecessary to address whether the reasons the order was issued have any effect on petitioner's eligibility for naturalization.

16

In short, there is no persuasive precedent for giving force to an executive commutation order *nunc pro tunc* to allow petitioner to avoid § 316.10(c)(2) and become immediately eligible for a good moral character determination. Citizenship for one not born in the United States may be acquired "only as provided by Acts of Congress," *Fierro v. Reno*, 217 F.3d at 3. Notably, no Act of Congress requires USCIS to consider executive clemency *at all* when determining a naturalization applicant's good moral character, let alone a clemency order *nunc pro tunc*. Executive acts of clemency are made relevant exclusively by the framework of § 316.10(c)(2), which refers to the date clemency is issued, not to the effective date of the clemency. USCIS was thus not required to ignore the nearly twenty years during which petitioner stood convicted of an aggravated felony simply because petitioner's commutation order was issued *nunc pro tunc* to her original 1995 sentencing date.

## IV.

In sum, USCIS's interpretation of § 316.10(c)(2)(i) to apply to a sentence commutation was reasonable and entitled to deference. Further, USCIS was not obligated to disregard § 316.10(c)(2)(i) and treat petitioner as having never been convicted of an aggravated felony simply because the Governor labeled the commutation order *nunc pro tunc* to the date of her sentence in 1995. Accordingly, the agency properly denied petitioner's application for naturalization for failing to demonstrate that she had received clemency for her aggravated felony "prior to" the statutory period. 8 C.F.R. § 316.10(c)(2)(i). Because petitioner is married to a U.S. citizen, that statutory period is three years, 8 U.S.C. § 1430(a); 8 C.F.R. § 319.1(a), making her eligible to demonstrate her good moral character in a new application for naturalization on December 18, 2015. Respondents' motion for summary judgment must be granted, and petitioner's motion must be denied.

An appropriate Order will issue.

/s/
_____
T. S. Ellis, III
United States District Judge